**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Lauren DeMasi,<br><br>                    Plaintiff,<br><br>v.<br><br>Horry County, Katie Badgett, Tara Chestnut-Smith, Judi Olmstead, Tammy Stevens, Barry Spivey, and April Kelly,<br><br>                    Defendants. | C.A. No.: 4:25-cv-2697-SAL<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded)<br><br>(Wrongful Discharge in Violation of Public Policy, Defamation, Civil Conspiracy, Violation of the South Carolina Whistleblower Act, Violations of the First and Fourteenth Amendments to the United States Constitution) |

Plaintiff Lauren DeMasi ("Plaintiff") complaining against Defendants Horry County, Katie Badgett, Tara Chestnut-Smith, Judi Olmstead, Tammy Stevens, Barry Spivey and April Kelly (collectively "Defendants") would respectfully show unto this Court as follows:

## NATURE OF THE ACTION

1.      Plaintiff was employed by Defendant Horry County as a Procurement Specialist. In early June 2024, Plaintiff uncovered extensive evidence of procurement fraud within Horry County. Thereafter, Plaintiff and several co-workers participated in a meeting in which the fraud and other suspected county wrongdoing regarding Defendant Olmstead and Myrtle Beach International Airport were discussed. Upon information and belief, the individual Defendants conspired to create a false pretext to terminate Plaintiff and her co-workers to prevent further revelation of the procurement fraud. On or about June 13, 2024, Defendant Horry County fired Plaintiff's co-workers who had been involved in uncovering the fraud, and Defendants Olmstead, Spivey and Badgett decided not to allow Plaintiff to return to the Myrtle Beach International Airport. On or about June

1

15, 2024, Plaintiff submitted a written report to her supervisors regarding the fraud she had uncovered. On June 17, 2024, Plaintiff complained about the behavior of Defendant Chestnut-Smith and Defendant Kelly after the termination of the employment of Plaintiff's co-workers. On June 18, 2024, Defendants Badgett and Stevens pulled Plaintiff into a meeting and told Plaintiff that if she did not resign immediately, she would be fired and made ineligible for unemployment benefits, which was a lie. Plaintiff resigned in lieu of being left without any income at all and immediately attempted to grieve the situation to Defendant Horry County. Defendant Horry County refused to process Plaintiff's grievance. After Plaintiff was terminated, Defendant Katie Badgett began to tell people in the community that Plaintiff had been fired for being in a cult, further damaging Plaintiff.

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

2.     Plaintiff Lauren DeMasi is a citizen and resident of Horry County, South Carolina.

3.     Defendant Horry County is a county in South Carolina.

4.     Upon information and belief, Defendant Katie Badgett is a citizen and resident of Horry County, South Carolina.

5.     Upon information and belief, Defendant Tammy Stevens is a citizen and resident of Horry County, South Carolina.

6.     Upon information and belief, Defendant Tara Chestnut-Smith is a citizen and resident of Horry County, South Carolina.

7.     Upon information and belief, Defendant April Kelly is a citizen and resident of Hillsborough County, Florida

8.     Upon information and belief, Defendant Barry Spivey is a citizen and resident of Horry County, South Carolina.

9.     Upon information and belief, Defendant Judi Olmstead is a citizen and resident of Horry County, South Carolina.

10.    This is a civil action brought under 42 U.S.C. § 1983 for declaratory and injunctive relief, damages, and attorneys' fees and costs to redress Defendants' unlawful deprivation of Plaintiffs' rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution.

11.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiffs claims arise under the laws of the United States, and they seek redress for violations of federal laws. The Court has jurisdiction to award the requested costs and attorneys' fees under 42 U.S.C. § 1988, and to issue injunctive relief, a declaratory judgment and other just and appropriate relief pursuant to 28 U.S.C. §§ 2201-02.

12.    This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1367 in that Plaintiff's state law claims share a common nucleus of operative fact with Plaintiff's claims arising under the Court's original jurisdiction and are so related as to form the same case or controversy.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391, as all or a substantial part of the events and omissions giving rise to this action occurred within the District of South Carolina.

14.    Plaintiff exhausted all administrative remedies and prerequisites prior to filing this lawsuit.

## FACTS

15.     Defendant Horry County hired Plaintiff as a Procurement Specialist on or about September 27, 2021.

16.     At all relevant times, Plaintiff's job performance met or exceeded Defendant Horry County's expectations.

17.     On or about April 22, 2024, Plaintiff was promoted to Procurement Specialist III by Defendant Horry County.

18.     Defendant Horry County assigned Plaintiff to spend one day a week at Myrtle Beach International Airport to work on procurement projects for Myrtle Beach International Airport and Defendant Judi Olmstead.

19.     Between May 1 and May 3, 2024, Horry County Director of Procurement Kimberly Massie and Horry County Procurement Deputy Director Jessica Williams discussed personnel problems they were having with Defendant Tara Chestnut-Smith and whether to issue discipline against her for her behavior.

20.     On May 8, 2024, Horry County's Director of Human Resources and Risk Management, Patrick Owens, sent recommendations to Ms. Williams and Ms. Massie on how to handle the issues with Defendant Chestnut-Smith.

21.     These recommendations included informing Defendant Chestnut-Smith that she should be more cooperative and adjust her attitude because her supervisors were not bullying her.

22.     In late May or early June 2024, Plaintiff reviewed a spreadsheet of expenses she prepared which corresponded to the purchase card transactions of certain Defendant Horry County employees.

23.     As a part of this review, Plaintiff noticed that there were many purchases made by both the Horry County Magistrates and Solicitor's Offices that had delivery addresses that did not appear to be county property, and in some cases the deliveries appeared to be directed to be the home addresses of Horry County employees.

24.     Plaintiff analyzed these spreadsheets and marked each time a purchase was made where the delivery address was not on Defendant Horry County's property.

25.     Plaintiff realized during this process that it appeared that Horry County procurement funds were being impermissibly used to direct goods such as golf equipment, large-screen televisions, and other luxury items to the homes of Horry County employees.

26.     In Plaintiff's experience, there would not be an approved reason for Defendant Horry County's public funds to be used to purchase golf equipment or luxury goods for Defendant Horry County's employees outside the normal procurement process.

27.     This discovery alarmed Plaintiff, and she immediately notified Ms. Massie and Ms. Williams of her findings.

28.     On or about June 4, 2024, Plaintiff, Ms. Massie, Ms. Williams, and Defendant Chestnut-Smith attended a procurement team meeting.

29.     At one point during the meeting, the procurement team discussed what to do about the suspected fraud discovered by Ms. Massie and Plaintiff.

30.     Upon information and belief, Defendant Chestnut-Smith recorded the meeting held on or about June 4, 2024, without informing anyone else in the meeting that she was doing so.

31.     During the meeting on or about June 4, 2024, Ms. Williams and Ms. Massie discussed their suspicions that there was significant fraud occurring in procurement at the Myrtle Beach International Airport involving Defendant Olmstead and expressed concerns that if they brought the fraud to Defendant Horry County, the issue would be swept under the rug by Defendant Horry County.

32.     In the meeting, Ms. Williams and Ms. Massie discussed reporting the suspected fraud to the United States Department of Justice.

33.     Upon information and belief, Defendant Chestnut-Smith turned the recording she made in to Defendant Badgett along with a statement in which she repeated many complaints about Plaintiff, Ms. Williams, and Ms. Massie including the new complaint that Ms. Williams, Ms. Massie, and Plaintiff made statements about corruption involving the Myrtle Beach International Airport and specifically, that Defendant Olmstead, Director of the Myrtle Beach International Airport, was committing procurement fraud.

34.     As part of her position as Deputy Director of the Procurement Department, Ms. Williams was tasked with reporting certain issues, including purchasing card problems, employees splitting transactions and employees engaging in unauthorized transactions.

35.     The final day for purchase orders in the fiscal year was June 7, 2024.

36.     There was an issue with an employee, Defendant Chestnut-Smith, who failed to do her job regarding the purchase order workload on June 6, 2024, the day before the purchase order deadline.

37.     Defendant Chestnut-Smith was reassigned to the front desk by the Director of the Procurement Department.

6

38.     Defendant Chestnut-Smith then filed a formal complaint to Human Resources about her reassignment, the Procurement Department as a whole, and other alleged issues within the department on June 6, 2024.

39.     Defendant Kelly assisted Defendant Chestnut-Smith with filing the complaint to Human Resources.

40.     Defendant Kelly had previously worked at the Myrtle Beach International Airport, a County owned Airport prior to transferring to the procurement office.

41.     Defendant Kelly had previously suggested to multiple county employees that she believed she should be promoted to Plaintiff's role of Procurement Specialist III.

42.     Defendants Chestnut-Smith and Kelly lobbied other employees to also complain about Plaintiff and her supervisors with the intent of bringing about their terminations.

43.     Defendant Chestnut-Smith's complaint included that Plaintiff, Ms. Williams, and Ms. Massie alleged internally that the Defendants engaged in corrupt and inappropriate procurement practices including a large capital purchase at the Myrtle Beach International Airport.

44.     The purchase in question was a passenger boarding bridge that was processed subject to special, sole source procurement that could have and should have been subject to an open competitive bid.

45.     The next day, on June 7, 2024, Mr. Owens forwarded a month-old email to Defendant Badgett enclosing his recommendations previously made regarding Defendant Chestnut-Smith, which constituted recommendations that Defendant

Chestnut-Smith should be directed to alter her general tone towards her leadership and follow leadership directions without defiance or complaint.

46. On June 10, 2024, Defendant Horry County employees interviewed Ms. Williams.

47. In the interview on June 10, 2024, interview, Defendant Horry County employees asked Ms. Williams about the following:

    a. Her relationships with management, certain employees, and the administration. In response to which, Ms. Williams told Human Resources that she had encountered issues with Defendant Chestnut-Smith and Defendant Kelly based on legitimate performance concerns and that those issues had been and were being appropriately addressed;

    b. A meeting on June 4, 2024, that, unbeknownst to Ms. Williams, was upon information and belief recorded by Defendant Chestnut-Smith where Ms. Williams' supervisor coached her team regarding unethical procurement practice, described her procurement concerns with the Myrtle Beach International Airport passenger boarding bridge purchase, and discussed potentially making a law enforcement referral to the United States Department of Justice;

    c. Whether Ms. Williams had made reports to the FBI and whether the Procurement Department kept a list of suspected audit, procurement, and purchase card issues. Ms. Williams truthfully stated she had not communicated a report to the FBI and described concerns her office was appropriately investigating regarding procurement and purchase cards;

    d. Whether anyone had placed "bugs" in the Procurement office; and

    e. Whether Ms. Williams temporarily kept kittens in her office during the workday that were found on the side of the road.

48. On June 10, 2024, at 1:37 PM, Mr. Owens emailed a draft list of discussion topics regarding Ms. Williams and Ms. Massie along with the document sent by Defendant Chestnut-Smith that described the meeting in which Ms. Massie, Ms. Williams, and Plaintiff were discussing county corruption.

49. On June 10, 2024 at 3:51 PM, Mr. Owens emailed Ms. Massie and Mr. Spivey to let them know that Defendant Horry County would be holding confidential interviews with Defendant Horry County Procurement Department employees and

acknowledged that Ms. Massie had reached out to him about a personnel issue about which they would talk about after the interviews.

50.     On June 11, 2024, Plaintiff met with Defendant Badgett and discussed the concerns she had regarding Defendant Kelly.

51.     On June 12, 2024, Ms. Massie emailed her report on the suspected fraudulent procurement purchases to Randy Webster, then Horry County Assistant County Administrator of Public Safety and Mary Mauch, Mr. Webster's Executive Assistant.

52.     On June 13, 2024 at 9:35 AM, Plaintiff sent a report showing improper purchase card use in the Horry County Magistrate's Offices to her supervisors.

53.     That day, Plaintiff arrived at the Myrtle Beach International Airport to work her normal one-day-a-week shift. After she arrived, Plaintiff got an email from Defendant Spivey requesting a meeting with "high level staff" like herself to discuss "leadership changes."

54.     Defendant Olmstead permitted Plaintiff to leave the Airport and return to the Horry County Procurement Office due to this request.

55.     On June 13, 2024, Defendant Horry County terminated the employment of Ms. Massie and Ms. Williams, citing inefficiency or lack of application in performance of duties, creation of a non-harmonious work environment, and loss of trust in execution of duties.

56.     On June 13, 2024 at 10:49 AM, Defendant Badgett ordered security badge access to be cut off for Ms. Massie and Ms. Williams.

57.    On Thursday June 13, 2024, at 4:29 PM, Defendant Olmstead emailed Defendant Spivey and Defendant Badgett to ask him to prevent Plaintiff from coming to her usual one day a week position at Myrtle Beach International Airport due to the "conversation and comments by [Plaintiff] today."

58.    Plaintiff had not spoken to Defendant Olmstead that day other than letting her know that Plaintiff had to return to the main office for a meeting.

59.    On Monday June 17, 2024, Plaintiff submitted a complaint about the behavior of Defendant Chestnut-Smith and Defendant Kelly, including their listening in on otherwise confidential Human Resources meetings, behaving belligerently at a work conference, Defendant Kelly blowing her nose close to Plaintiff to antagonize and disgust her, and their behavior after the termination of Ms. Massie and Ms. Williams.

60.    In the meeting on June 17, 2024, Plaintiff also reported that Defendant Chestnut-Smith and Defendant Kelly had been calling other Procurement Department employees and asking them to help get rid of Ms. Massie, Ms. Williams, and herself.

61.    On June 18, 2024, Defendant Tammy Stevens informed Plaintiff that she should attend a short meeting with Defendant Horry County's Human Resources Department that afternoon.

62.    Plaintiff suspected at that time that she could be terminated at that meeting because her colleagues had recently also been terminated.

63.    On June 18, 2024, at 4:39 PM, in anticipation of being terminated, Plaintiff forwarded a draft report regarding the suspected procurement fraud with the Horry County Solicitor's Office to Defendant Horry County Procurement Specialist Angela Williamson to preserve the information in case she was terminated.

64.     On June 18, 2024 at 4:45 PM, Plaintiff attended a meeting with Defendant Badgett and Defendant Tammy Stevens.

65.     During this meeting, Defendant Badgett told Plaintiff that she had asked the other involved employees whether Defendants Chestnut-Smith and Defendant Kelly were calling them, and those employees denied receiving the calls.

66.     Defendant Badgett informed Plaintiff that she was being asked to resign due to lying about the calls and causing "disharmony" in the workplace.

67.     Upon information and belief, Defendant Chestnut-Smith, Defendant Kelly, Defendant Badgett, Defendant Spivey, Defendant Olmstead, and Defendant Stevens conspired to create a false pretext to get rid of Plaintiff to cover the fraudulent activities uncovered by Plaintiff and her co-workers.

68.     In this meeting, Defendant Badgett and Defendant Stevens gave Plaintiff the choice to resign her position or be terminated, and Defendant Badgett told Plaintiff that if she resigned, she would be able to receive unemployment benefits, but if she was terminated, she would be ineligible for benefits.

69.     Plaintiff learned later that this was a lie and the opposite was true: that if Plaintiff had been terminated without cause, she would have received unemployment benefits, but she would be ineligible for unemployment benefits if she resigned.

70.     Plaintiff had no choice but to resign; and immediately after she resigned, she reached out to her co-workers let them know that she had been terminated.

71.     Plaintiff's co-workers responded with shock and confusion, assuring Plaintiff that they had no idea about her termination and they openly shared that they absolutely

had the phone calls Plaintiff had been accused of lying about and that no one had asked them if the calls occurred.

72. On June 19, 2024, Plaintiff reached out to Defendant Stevens and asked to file a grievance over her termination, attaching screenshots in which her co-workers confirmed that she had not lied.

73. In response, Defendant Horry County refused to allow Plaintiff to grieve her termination, and Defendant Spivey stated that because Plaintiff had resigned, she did not have grievance rights.

74. Plaintiff attempted to grieve her termination up the chain of command but was rebuffed at every turn.

75. Defendant Badgett and Defendant Stevens also told Plaintiff that because she resigned from employment with Defendant Horry County, she would never be eligible for rehire with Defendant Horry County.

76. Upon information and belief, Ms. Williams grieved her termination and was told that she was terminated her due to having kittens in her office.

77. On January 13, 2025, Defendant Horry County delegated the authority to approve contracts, modifications, change orders, and other agreements up to $500,000.00 without preapproval from the Procurement Department to Defendant Olmstead.

## FOR A FIRST CAUSE OF ACTION
### (Wrongful Discharge in Violation of Public Policy)
### (Against Defendant Horry County)

78. Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 77 above, incorporating the allegations herein by reference.

79.     Defendant Horry County terminated Plaintiff because of complaints she expressed about violations of the state and county procurement code with respect to misusing exceptions to the general rule that projects involving considerable expenditures of public funds should be subject to open, competitive bidding.

80.     Plaintiff was terminated because she was suspected of making reports to federal law enforcement agencies about procurement code violations and ethical concerns relating to the sole-source procurement of a passenger boarding bridge which could have and should have been the source of open competitive bidding.

81.     The following clear mandates of public policy are implicated in Plaintiff's termination:

a.     S.C. Code Ann. § 11-35-20 establishes the purposes and policies of the South Carolina Consolidated Procurement Code, including the purpose of "provid[ing] increased economy in state procurement activities and to maximize to the fullest extent practicable the purchasing values of funds while ensuring that procurements are the most advantageous to the State and in compliance with the provisions of the Ethics Government Accountability and Campaign Reform Act," "ensur[ing] the fair and equitable treatment of all persons who deal with the procurement system which will promote increased public confidence in the procedures followed in public procurement; and "provid[ing] safeguards for the maintenance of a procurement system of quality and integrity with clearly defined rules for ethical behavior on the part of all persons engaged in the public procurement process.";

b.     2019 Act No. 41, preamble ("Whereas, it is the intent of the General Assembly that agencies and institutions comply with Section 11-35-1530, which limits use

of this source selection method to circumstances in which the use of competitive sealed bidding is either not practicable or not advantageous to the State[.]")

     c.     The Horry County Procurement Regulations including specifically Regulations 2-3-1, 2-3-2, 4-2-3, and 4-2-4.

     d.     S.C. Code Ann. § 8-13-700 which forbids the use of one's office to obtain a personal financial gain.

82.     The same amounts to a termination in violation of a clear mandate of public policy for which Defendant Horry County is liable.

83.     Plaintiff is entitled to recover damages for lost wages, lost benefits, diminished earning capacity, reputational harm, and emotional distress.

### FOR A SECOND CAUSE OF ACTION
**(Defamation)**
**(Against Defendant Katie Badgett)**

84.     Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 77 above, incorporating the allegations herein by reference.

85.     Plaintiff is not a *New York Times v. Sullivan* public official.

86.     Defendant Badgett has communicated knowingly false defamatory remarks about Plaintiff including that she and her former supervisor were members of a cult.

87.     These statements constitute *per se* defamation insomuch as it demeans Plaintiff's professional reputation and otherwise has caused Plaintiff special harm insomuch as these communications have reasonably lessened Plaintiff's esteem amongst her peers.

88.     Plaintiff is entitled to recover damages for reputational harm, lost earning capacity, shock, humiliation, and emotional distress.

### FOR A THIRD CAUSE OF ACTION
### (Civil Conspiracy)
### (Against Defendants Katie Badgett, Tara Chestnut-Smith, Judi Olmstead, Tammy Stevens, Barry Spivey, April Kelly)

89.    Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 77 above, incorporating the allegations herein by reference.

90.    Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly conspired to tortiously interfere with Plaintiff's employment and to defame her.

91.    Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly did tortiously interfere with Plaintiff's employment causing the termination thereof and defamed Plaintiff in the process.

92.    The same amounts to an unlawful civil conspiracy for which they are liable.

93.    Their conduct was intentional, willful, and wanton and Plaintiff is entitled to punitive damages for the same.

94.    Plaintiff is entitled to recover damages caused by this civil conspiracy, including damages for lost wages, diminished earning capacity, reputational loss, and emotional distress.

### FOR A FOURTH CAUSE OF ACTION
### (Violation of the South Carolina Whistleblower Act)
### (Against Defendant Horry County)

95.    Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 77 above, incorporating the allegations herein by reference.

96.    Under the South Carolina Whistleblower Act, a public body may not dismiss from employment an employee of a public body because the employee files a report with an appropriate authority of wrongdoing. S.C. Code Ann. § 8-27-20(A).

97.     During all relevant times to Plaintiff's claim Plaintiff was an employee of Defendant Horry County.

98.     Defendant is a public body under the Whistleblower Act because it is a county of South Carolina.

99.     In early June 2024, Plaintiff made a written report of procurement fraud to Defendant Horry County.

100.    Plaintiff's report included Plaintiff's name and the date of the report.

101.    Plaintiff's report included allegations that Defendant Horry County employees were intentionally engaging in procurement fraud.

102.    Plaintiff's report was made within one hundred and eighty days of the date she learned of the procurement fraud.

103.    Defendant Horry County constructively terminated Plaintiff shortly after Defendant Horry County learned that Plaintiff had uncovered the procurement fraud.

104.    Defendant Horry County constructively terminated Plaintiff because she had uncovered procurement fraud.

105.    Defendant Horry County's termination of Plaintiff is a violation of the South Carolina Whistleblower Act.

106.    Plaintiff exhausted all administrative remedies prior to filing this lawsuit by attempting to grieve her termination on June 19, 2024.

107.    As a direct and proximate result of Defendant Horry County's violation of the South Carolina Whistleblower Act, Plaintiff has suffered lost wages actual damages, pain and suffering, and she was deprived of the opportunity to continue her employment with Defendant Horry County until the date of her retirement.

108.    Therefore, Plaintiff is entitled to a judgment of full actual and consequential damages, reinstatement to her former position, and reasonable attorney's fees.

## FOR A FIFTH CAUSE OF ACTION
**(42 U.S.C. § 1983 -- Violation of the First and Fourteenth Amendments to the United States Constitution)**
**(Against Defendants Katie Badgett, Tara Chestnut-Smith, Judi Olmstead, Tammy Stevens, Barry Spivey, April Kelly)**

109.    Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 77 above, incorporating the allegations herein by reference.

110.    Plaintiff's right to speak freely about matters of public concern is protected by the First and Fourteenth Amendments to the United States Constitution. Citizens have a vital interest in free and open discussion on issues of public interest and importance.

111.    It is a violation of the First and Fourteenth Amendments to the United States Constitution for public employers, including Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly, to discriminate against or discipline employees in retaliation for speaking out against matters of public concern, including government misconduct. *See Durham v. Jones*, 737 F.3d 291, 303 (4th Cir. 2013).

112.    Plaintiff reported procurement fraud to Defendant Horry County because it is a matter of public interest and concern because misuse of public funds affects the social, political, and general well-being of the community. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir. 1999).

113.    Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly's decisions to discipline and terminate Plaintiff were motivated in response to Plaintiff's making of constitutionally protected statements about a matter or matters of public concern.

114.    In doing so, Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly retaliated against Plaintiff for engaging in activity protected by the First and Fourteenth Amendments' guarantee of the right of free speech.

115.    Such conduct by Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly was done in a knowingly, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights a reasonable person would have known. *See, e.g. Edwards v. City of Goldsboro*, 178 F.3d 231; *Durham v. Jones*, 737 F.3d 291.

116.    As a direct, foreseeable, and proximate result of Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly's unlawful conduct, Plaintiff has suffered, and continues to suffer, injuries and irreparable harm.

117.    Upon information and belief, Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly's actions against Plaintiff were intentional, malicious, and in reckless disregard for her rights to be free from such unlawful action. Therefore, Plaintiff is entitled to recover punitive damages against Defendants in an amount to be determined by the jury that is sufficient to deter Defendants and others from engaging in such unlawful actions in the future.

118.    Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are

fully liable to Plaintiff for her injuries resulting from their retaliation in violation of the First and Fourteenth Amendments.

119.    Defendants are also liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## FOR A SIXTH CAUSE OF ACTION
### (42 U.S.C. § 1983—Violation of the Fourteenth Amendment to the United States Constitution)
### (Against Defendants Katie Badgett, Tara Chestnut-Smith, Judi Olmstead, Tammy Stevens, Barry Spivey, April Kelly)

120.    Plaintiff repeats and realleges the allegations set forth herein in paragraphs 1 through 77 above, incorporating the allegations herein by reference.

121.    Plaintiff's rights to a pre-termination hearing, a post-termination hearing, and hearing prior to the permanent deprivation of future employment are protected by the Fourteenth Amendment to the United States Constitution.  *Gilbert v. Homar*, 520 U.S. 924, 929, (1997) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985)); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (citing *Arnett v. Kennedy*, 416 U.S. 134, 170 (1974)).

122.    It is a violation of the Fourteenth Amendment to the United States Constitution for public employers, including Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly, to deny a public employee a pre-termination hearing.

123.    It is also a violation of the Fourteenth Amendment to the United States Constitution for public employers, including Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly, to deny a public employee a post-termination hearing.

124.    It is a further violation of the Fourteenth Amendment to the United States Constitution for public employers, including Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly, to permanently deprive a public employee future employment without the opportunity for a hearing.

125.    Plaintiff is a tenured public employee, as she was a permanent employee and had completed at least six months of satisfactory performance with Defendant Horry County. *See* S.C. Code Ann. §§ 8-17-150.

126.    As a tenured public employee, Plaintiff was entitled to oral and/or written notice of any charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story.

127.    Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly failed to give Plaintiff notice of any actual charge against her, as they provided her with false, pretextual justifications for her termination and failed to give her an explanation of the evidence of their true motives for terminating her, which was to hide their fraud.

128.    Moreover, Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly lied to Plaintiff and gave her false evidence of their pretextual justifications for terminating her.

129.    Because Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly provided Plaintiff with pretextual charges against her and false evidence, she was not able to present the full side of her story.

130.    Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly also deprived Plaintiff of an opportunity for post-termination procedures, as they provided

false information regarding her rights in order to induce her to resign and forfeit her grievance rights.

131.    Upon learning the true nature of Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly's motivation for terminating her and that Defendants had lied to her regarding her Due Process rights, Plaintiff attempted to pursue her grievance rights, but Defendants refused to grant her a hearing or other opportunity to grieve her termination.

132.    Furthermore, Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly disqualified Plaintiff from all future employment with Horry County without providing her an opportunity for a hearing or opportunity to confront adverse witnesses.

133.    Consequently, Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly have deprived Plaintiff of her Constitutional right to procedural due process in their conduct leading up to, during, and subsequent to their termination of Plaintiff.

134.    Such conduct by Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly was done in a knowingly, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights a reasonable person would have known. *See, e.g. Gilbert v. Homar*, 520 U.S. 924, 929, (1997) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985)); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (citing *Arnett v. Kennedy*, 416 U.S. 134, 170 (1974)).

135.   As a direct, foreseeable, and proximate result of Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly's unlawful conduct, Plaintiff has suffered, and continues to suffer, injuries and irreparable harm.

136.   Upon information and belief, Defendants Badgett, Chestnut-Smith, Olmstead, Stevens, Spivey, and Kelly's actions against Plaintiff were intentional, malicious, and in reckless disregard for her rights to be free from such unlawful action. Therefore, Plaintiff is entitled to recover punitive damages against Defendants in an amount to be determined by the jury that is sufficient to deter Defendants and others from engaging in such unlawful actions in the future.

137.   Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for her injuries resulting from their denial of her Due Process rights in violation of the Fourteenth Amendment.

138.   Defendants are also liable for Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE**, having fully pled, Plaintiff requests that this action be tried by a jury and prays that judgment be awarded against Defendants for actual damages in such an amount as shall fairly, justly, and adequately compensates her for her losses, declaratory and injunctive relief, liquidated damages, consequential damages, punitive damages,

attorneys fees and costs, and for such other further relief as this Court deems just and proper.

s/  Sarah J.M. Cox
Jack E. Cohoon (Fed. Bar. No. 9995)
Sarah J.M. Cox (Fed. Bar No. 13166)
Lydia Robins Hendrix (Fed. Bar No. 14192)
BURNETTE SHUTT & MCDANIEL, PA
912 Lady Street, Second Floor
P.O. Box 1929
Columbia, South Carolina 29202-1929
Telephone:  803.904.7930
Facsimile: 803.904.7910
jcohoon@burnetteshutt.law
scox@burnetteshutt.law
lhendrix@burnetteshutt.law

**ATTORNEYS FOR PLAINTIFF**

March 31, 2025

Columbia, South Carolina